IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

   -v-                                       18-CR-148-A

CARLOS FRANCISCO LOPEZ
        a/k/a playfulchaos,

                       Defendant.
_____

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S SENTENCING MEMORANDUM

      **THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response in opposition to the defendant's sentencing memorandum seeking a below-guidelines sentence.

## PRELIMINARY STATEMENT

      On July 15, 2019, the defendant appeared before this Court and pled guilty to Counts 1 and 2 of the Indictment without a plea agreement.  Count 1 charged the defendant with attempted enticement of a minor in violation of Title 18, United States Code, Section 2422(b), and Count 2 charged the defendant with attempted transportation of a minor with the intent to engage in criminal sexual activity in violation of Title 18, United States Code, Sections 2423(a) and 2423(e).  The defendant previously filed objections to the Presentence Report ("PSR") on March 9, 2020, arguing that certain guideline enhancements should not be applied in the present case and disputing some facts included in the PSR.  *See* Dkt. #37.

Although the government agreed with the defendant that the 2-level enhancement pursuant to U.S.S.G. §2G1.3(b)(2)(A) should not be applied, the government opposed all of the other objections made by the defendant. *See* Dkt. #38. Thereafter, a revised PSR was submitted to the parties which omitted the §2G1.3(b)(2)(A) enhancement from the defendant's advisory guideline calculation. The PSR now has calculated the defendant's total offense level as 32 with a criminal history category of IV, resulting in an advisory guideline range of 168 to 210 months. Additionally, the government has agreed to move for an additional 1 level downward departure, which would result in an advisory guideline range 151 to 188 months. On March 5, 2021, the defendant filed a sentencing memorandum requesting a non-guideline sentence of 120 months. This memorandum is submitted in opposition to defendant's request for a non-guideline sentence and in support of the government's contention that this Court should impose an above-guideline sentence of imprisonment of 300 months (25 years).

## STATEMENT OF FACTS

The government concurs with and relies on the statement of facts outlined in the Revised PSR at paragraphs 8 through 27.

## DISCUSSION

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). As noted by the Supreme Court, the guidelines have a "real and pervasive effect … on sentencing" and

therefore, "are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). The United States contends that an above-guideline sentence of 360 months is reasonable and appropriate considering the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress .... It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

Based on the § 3553(a) factors, as set forth below, the government respectfully submits that an above-guideline sentence of 300 months imprisonment is warranted.

A.     **The Nature and Circumstances of the Offense Warrant a Substantial Sentence of Imprisonment**

As set forth in the PSR, the defendant communicated with a 15-year-old minor victim (hereinafter "Victim 1") with the intent to have Victim 1 travel across the country so that the defendant could have sex with her.  As part of this conduct, within a matter of days, the defendant facilitated Victim 1 from running away from home by purchasing a bus ticket for her in a fictious name and encouraging her to leave her family and travel to him, which included his advice for Victim 1 to bring her birth certificate with her.  Additionally, during the defendant's communications with Victim 1, despite initially telling Victim 1 he was not interested in getting pictures from her, the defendant subsequently asked Victim 1 to produce child pornography by taking naked pictures of herself.  Had it not been for a friend of Victim 1 who saw her board a local bus near her residence and reported that to law enforcement, the defendant may have been successful in having Victim 1 travel to him so that he could rape her.

Moreover, during the defendant's communications with Victim 1, on several occasions the defendant noted that he had purchased bus tickets for other minors in the past and did not want to get "scammed" again.  The defendant also urged Victim 1 to keep their arrangement secret, otherwise "that would mean prison."  The defendant propositioned Victim 1 to have a three-way sexual encounter with him and another minor female and was explicit in his intent on engaging in sexual activity with Victim 1.  The nature and circumstances of the offense warrant a substantial sentence of imprisonment as the defendant preyed on a vulnerable victim solely to satisfy his own pedophilic desires.  The defendant was aware of the consequences for his actions, yet, despite the prosect of going to jail, the defendant chose

4

to sexual exploit another minor female.  As will be discussed below, this is all the more shocking given the defendant's past conduct.

Therefore, based on the nature and circumstances of the present offense, including the rapid targeting of an underage female to engage in sexually exploitive conduct, the government respectfully suggests that an above-guideline sentence of 300 months imprisonment is appropriate.

**B.      The History and Characteristics of the Defendant Warrant a Substantial Term of Incarceration**

The history and characteristics of the defendant clearly distinguish this case from most other cases involving the sexual exploitation of children.  In this case, the defendant is an admitted pedophile and has sexually molested at least four other minor females, two of which resulted in serious felony convictions in the State of California.  Based on the defendant's past conduct, the defendant has demonstrated that he is a sexual predator, and based on the characteristics of the defendant, the government has no doubt he will quickly reoffend if released back into society.

As part of the conduct underlying the defendant's 2010 conviction for Unlawful Sexual Intercourse with a Minor and First Degree Burglary in California Superior Court of Los Angeles County, set forth in paragraph 50 of the PSR, the defendant engaged in sexual activity with a 15-year-old minor victim on several occasions and engaged in coercive conduct to continue the sexual activity.  Specifically, as outlined in the PSR, the defendant threatened to send a video of the sexual activity to the victim's father if she did not continue to have sex

with him.  Additionally, as outlined in the police reports provided to the defendant during

discovery, the defendant also engaged in communications with several other minor females

who were friends with the victim, and threatened to embarrass or send damaging information

if they did not have sex with the defendant, as documented below:

### Interview of V/4:

I next spoke to V/4.  I introduced myself and asked if she knew why I wanted to speak to her.
She said, "Because of what's been going on the last few weeks."  I asked her to explain and she
said, "This guy started texting me.  His name is Carlos...he's an adult, he goes to Cal State L.A.  He
started texting me...I knew who he was from last year. _____ (V/1) said she was friends with him
and hung out with him."  V/1 showed V/4 a photo of the Suspect the year before.  V/4 said, "He said
he wanted to go out with me.  I said no and he said, 'If you don't go out with me, bad things will
happen.'"  The Suspect also offered to take her shopping in return for a date.

### Interview of V/2:

I introduced myself to V/2 and asked if she knew why I wanted to speak to her.  She said,
"Because of the stalker..Carlos."  V/2 explained that a man she knew as "Carlos" from V/1.  Carlos
had been texting her on her cell phone.  W/2 had assisted Dep. Matejka by taking screen shots of
messages from the Suspect on V/2's phone.  I had previously seen the screen shots which originated
from the Suspect's phone (310-384-7254).  The Suspect solicited V/2 to go on a date with him.  He
texted her in part:

- "11/27/09:    Seriously, it would just be easier for everyone if you just gave in."
  "Lol you're so cute!  You actually think you have a choice!"
  "Funny.  We'll see what your principal says when I talk to him on Monday"
  "That's fine.  If you don't want to be with me.  There's no reason to play
  nice."

The Suspect threatened to have the Victim's grades at school changed or get her father fired
from his job if she refused to go out with him.  This was similar to threats or coercive statements
described by V/1 and V/4 already.  I showed V/2 a copy of the screen shots, which she identified as
coming from her phone.  V/2 never met with the Suspect however, V/1 previously showed V/2 a
photo of the Suspect when she talked about him.  V/2 was aware of the sexual relationship between
V/1 and the Suspect.  She was scared the Suspect might follow through with his threats and come to
her home or school.

The PSR also documents the defendant's rape, on three occasions, of a 14-year-old

minor victim.  The defendant met this victim via text messaging, and then arrived at her

school in February 2011 and asked her to get into his car.  Once in the car, the defendant

drove to San Angelo Park, which is approximately 15 miles east of Los Angeles, CA.  Once

at the park, the defendant raped the victim in the back seat of the car, during which the victim told the defendant "stop please get off me."  The defendant then raped the victim on two other occasions, and during all three rapes, the victim cried.

The defendant's sexual exploitation of minor females also included successfully engaging in conduct substantially similar to the present offense.  Specifically, in 2017, the defendant met a 16-year-old minor female using the Kik app, who wanted to run away from her home.  The PSR identifies this individual as Victim 2.  Although Victim 2 had texted with the defendant in a sexual nature prior to her arrival, she made it clear to the defendant that she did not want to have sex when she arrived at his residence.  Nevertheless, the defendant engaged in vaginal sex with Victim 2 against her will, after which Victim 2 left the defendant's residence.  Victim 2 was a virgin prior to meeting the defendant, and was so disturbed in talking about that the defendant did to her with the FBI that she initially had to write it down.

In analyzing the history and characteristics of this defendant, the Court should rely heavily on the fact that at the time of the instant offense, the defendant was a registered sex offender on parole with the State of California, and was required to wear an electronic ankle monitor.  Moreover, to commit the instant offense, the defendant utilized an unauthorized smart phone that was concealed from his California parole officer.  Importantly, based on his prior convictions, the defendant already had two "strike" convictions under California law, and with a third "strike" conviction, the defendant would be subject to a mandatory prison sentence of 25 years and a maximum of life.  *See* Cal. Penal Code § 667(e).  At the time of the

defendant's arrest for the instant offense, the defendant acknowledged his two "strike" status, as reflected in a portion of the FBI report of interview of the defendant set forth below:



FD-302 (Rev. 5-8-10)

- 1 of 8 -

**FEDERAL BUREAU OF INVESTIGATION**

OFFICIAL RECORD

Date of entry     01/31/2018

CARLOS FRANCISCO LOPEZ, date of birth ████████ social security account number ████████ was interviewed post arrest on January 19, 2018. The interview took place during transport and at the Monterey Park Jail, located at 320 West Newmark Avenue, Monterey, California. Below is a summary of the recording and is not intended to be a verbatim account. It does not memorialize all statements made during the interview.

FNMC0211_20180120005854 (00:00 - 1:40)
LOPEZ briefly spoke with his Parole agent, refused to provide a pin code to access his phone and did not want to say anything without an attorney. LOPEZ told Agents he would not provide his pin because he needed to be careful about what he said. He expressed interest in answering whatever questions he could and was not invoking his rights and waived them. SA Farrell reviewed an Advice of Rights form with LOPEZ in which LOPEZ indicated he understood his rights as they were read to him. LOPEZ wanted to know how much information Agents had and wanted to know what he could do to receive as little jail time as possible.

LOPEZ believed he was being accused of sex trafficking and indicated he was a "two-striker" within the state of California. LOPEZ explained he had been previously charged with statutory rape when he was younger. The victim in that case was his girlfriend. The two had been dating on and off when he was approximately seventeen/eighteen. He was incarcerated for the charge and upon his release, he began communicating online with a minor from San Bernardino County for the purpose of having sex with her. LOPEZ admitted to choosing his words carefully so he would not hurt himself and possible imply other acts.

And despite the defendant being placed on extremely stringent conditions of parole, and despite the defendant facing a 25 year sentence upon another "strike" conviction, the defendant still engaged in the instant offense by attempting to lure a minor female to embark on a cross-country trip so that he could sexually molest her.  This supports the government's belief that the defendant is an extremely dangerous predator who is unable to control his illegal sexual desires and comply with the law.

During the defendant's interview with the probation officer preparing the PSR, the defendant claimed that he was a "drug addict" and that this addition played a role in why he committed the instant offense.  *See* PSR ¶ 31.  However, at the time of the defendant's arrest, the defendant never mentioned that drugs played a role in the instant offense, and instead, discussed that he learned his girlfriend was chatting online with other individuals, and that he was depressed and lonely.  Therefore, it appears to the government that the defendant is now attempting to come up with a convenient excuse to give this Court as to why he committed the crimes of conviction.

The defendant has been given several opportunities to lead a law-abiding life, yet unfortunately for any of the minor females who have come into his orbit, he has simply continued to sexually exploit them.  As such, the only option to deter the defendant's uncontrollable urge to entice and rape minor girls is to impose a substantial term of incarceration.  Based on the defendant's prior hands-on sexual contact with minor females, coupled with the defendant's re-offending conduct which indicates an inability to control his own actions, the defendant poses a significant threat to the public, and particularly, minor female children.  Therefore, the characteristics of the defendant, as applied to this case, weigh in favor of a significant term of incarceration, which the government believes would be 25 years, which is the sentence the defendant would have faced had he been charged and convicted by state authorities in California.

## **CONCLUSION**

For the foregoing reasons, the defendant should be sentenced to an above-guideline term of incarceration of 300 months.

DATED:  Buffalo, New York, March 10, 2021.

JAMES P. KENNEDY, JR.
United States Attorney

**_S/ AARON J. MANGO_**

BY: _____

AARON J. MANGO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5882
aaron.mango@usdoj.gov